UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Avery Dennison Corporation,　　　　　　　　　　Case No. 3:13cv00141

　　　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Mark Juhasz, et al.,

　　　　　　Defendants


### INTRODUCTION

On January 21, 2013, Plaintiff Avery Dennison Corp. filed a Verified Complaint seeking a temporary restraining order, preliminary and permanent injunctive relief, and damages against r-pac International Corp. and Mark Juhasz. (Doc. No. 1). Avery Dennison asserts claims against Juhasz for breach of contract, against both Defendants for misappropriation of trade secrets, and against r-pac for tortious interference with contract. (Id.). Avery Dennison filed a motion for a temporary restraining order and a motion to expedite discovery on January 22, 2013. (Doc. No. 2, Doc. No. 6). Following a telephone status conference with counsel for the parties,[1] I issued an order granting those motions. (Doc. No. 8). Subsequently, I scheduled a hearing on Avery Dennison's request for a preliminary injunction. (Doc. No. 18). On February 6, 2013, I entered an order approving the parties' stipulated agreement to extend the temporary restraining order until the conclusion of and entry of an order on the preliminary injunction hearing. (Doc. No. 25).

---

[1] Counsel for the Defendants had not yet filed a notice of appearance, given the short timeframe since the filing of the Verified Complaint, but did so subsequently.

The Defendants have filed a brief in opposition to Avery Dennison's motion for a preliminary injunction. (Doc. No. 30). Avery Dennison has filed a brief in reply. (Doc. No. 33). On February 13 and 14, 2013, I conducted a hearing on Avery Dennison's request for a preliminary injunction, during which the parties presented evidence and arguments.[2] Because Avery Dennison has not established a likelihood it will succeed on the merits of its claims, I deny its motion for a preliminary injunction and order the temporary restraining order dissolved forthwith.

## BACKGROUND

In order to better track inventory, many garment manufacturers and retailers choose to imbed small electronic chips with antennas into labels affixed to the garments, a technology called "RFID," short for radio frequency identification. By passing an electronic wand in close proximity to those chips, employees can quickly detect details about the garment, such as style, color and size. Avery Dennison and r-pac are major players in the garment label business, including labels with such embedded chips. The business can be lucrative and, accordingly, very competitive.

Juhasz is a former employee of Avery Dennison, who began working for Avery Dennison in late 2000 and remained there until December 7, 2012, when he resigned. (Doc. No. 1 at 2, 18). Most recently, Juhasz was a Manager, and then a Director, in Avery Dennison's Mass Segment division. (Doc. No. 1 at 13). Juhasz signed an employee agreement with Avery Dennison when he began working for the company and has signed at least one successor agreement; Juhasz signed the most recent iteration of that agreement on April 5, 2010 (the "Employee Agreement"). (Doc. No. 1 at 8, Doc. No. 1-1). This dispute arises from Juhasz's choice to accept employment with Avery Dennison's rival, r-pac, in January of this year.

The Employee Agreement forms the crux of this litigation and includes the following provisions, among others:

> **3. Avery Dennison's Confidential Information.** During and after my employment with Avery Dennison, I will not directly, indirectly, or inevitably use or

---

[2] The parties may obtain a transcript of those proceedings by contacting court reporter Angela Nixon.

2

> disclose any Confidential Information, except as required in order to perform my job for Avery Dennison. . . .
>
> **7. Non-Competition Requirement.** . . . I agree not to directly or indirectly engage in Competitive Employment while an employee of [Avery Dennison] and for one year after my employment ends. . . . I understand and agree that "Competitive Employment" means any non-Avery Dennison position requiring that I directly or indirectly provide services . . . that are the same or similar in function or purpose to those I provide to [Avery Dennison] during the last two years of my employment (the "Look Back Period") or that are otherwise likely to result in the use, usurpation, or disclosure of Confidential Information or customer goodwill for any . . . corporation . . . that is engaged in, or that is intending or attempting to become engaged in, the research, development, manufacture, sale, service or supply of any product, process, or service substantially similar to or competitive with any product, process, or service on which or with which I worked, or about which I obtained Confidential Information, during the Look Back Period. I understand that this non-competition requirement is limited to my territory and to Covered Customers (defined below) wherever located.
>
> **8. Non-Solicitation.** For one year after my employment ends . . . I will not directly or indirectly call upon, solicit, divert or take away, or attempt to call upon, solicit, divert or take away, any customers of [Avery Dennison] upon whom I called, serviced, or solicited, or with whom I became acquainted during the Look Back Period ("Covered Customers") . . . .

(Doc. No. 1-1 at 1-2). The Employee Agreement also defines the content of the term "Confidential Information," and extends the Non-Solicitation provision to cover "any other business relationships, suppliers, or vendors" and employees of Avery Dennison. (Id.).

Avery Dennison asserts Juhasz breached the Employee Agreement "as a result of his actions in accepting employment with r-pac," by "wrongfully and intentionally taking Avery Dennison's confidential and trade secret information[3] and using (or inevitably using) them during the course of his employment with r-pac," and "by using and disclosing, intentionally and/or inevitably, Avery Dennison's confidential and trade secret information." (Doc. No. 1 at 25). Avery Dennison further asserts " Juhasz['s] and r-pac's acts and conduct constitute a violation and threatened violation of Ohio's Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61 *et seq.*, and the . . . misappropriation of trade secrets under Ohio common law [was] willful, malicious, and in reckless disregard of the

---

[3] During the preliminary injunction hearing, Avery Dennison conceded it has no evidence, and no longer suspects, that Juhasz took any physical or electronic documents, data, or information with him when he resigned from Avery Dennison. It continues to assert, however, that Juhasz learned or was exposed to confidential and trade secret information and that this poses a serious risk of future use or disclosure, whether intentional, inevitable, or both.

3

adverse consequences to Avery Dennison." (Doc. No. 1 at 27). Finally, Avery Dennison asserts "r-pac tortuously interfered with the Employee Agreement by hiring Juhasz and/or directing Juhasz to breach the Employee Agreement and in directing Juhasz to be deceptive about his employment with r-pac until he was out of the country." (Doc. No. 1 at 28).

The Defendants state that "Juhasz accepted an operations role at r-pac without customer-facing or sales responsibilities to comport with the [Employee] Agreement's prohibition against providing services that are the same or similar to those he provided in his last two years" of employment with Avery Dennison. (Doc. No. 30 at 8). The Defendants further assert that Juhasz has not provided any trade secrets or confidential information to r-pac or called upon or solicited any of his former customers at Avery Dennison, and that he will not do so in the future. (Id.).

### CHOICE OF LAW

Avery Dennison asserts Ohio law applies to all aspects of this case. The Defendants contend that while Ohio law applies to the Employee Agreement, California or Hong Kong law applies to the misappropriation of trade secrets claim, and California law applies to the tortious interference with contract claim.

There is federal subject matter jurisdiction over this case under 28 U.S.C. § 1332 and so I must apply Ohio's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Ohio has adopted the principles set forth in the Restatement (Second) of the Law of Conflicts. *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 289 (Ohio 1984).

Under Ohio law, if the parties have not agreed to a choice of law provision in the contract – and the parties here did not – a court should consider the factors enumerated in § 188 of the Restatement. *Gries Sports Enters., Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984). Section 188 provides:

> In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place of contracting,

4

>   (b) the place of negotiations of the contract,
>   (c) the place of performance,
>   (d) the location of the subject matter of the contract, and
>   (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflicts of Laws § 188 (1971).

Avery Dennison asserts that factors (a), (b), and (c) support the application of Ohio law to the Employee Agreement, while factor (e) is inconclusive, and factor (d) is inapplicable. (Doc. No. 33 at 4). The Defendants do not address the § 188 factors but appear to believe that either Ohio or New York law applies to the Employee Agreement. (*See* Doc. No. 30 at 12-14). Juhasz signed the Employee Agreement in Ohio and the evidence demonstrates his work for Avery Dennison was based in Ohio, though he traveled extensively on behalf of Avery Dennison. Thus it appears factors (a) and (c) favor the application of Ohio law. The other factors are inapplicable or inconclusive and do not support the application of the law of another state to the Employee Agreement. I conclude Ohio law applies to the Employee Agreement.

Claims for misappropriation of trade secrets as well as tortious interference with contract are tort claims. *See* Black's Law Dictionary (9th ed. 2009) (business torts include tortious interference with contractual relations and misappropriation of trade secrets). In tort actions, Ohio courts look to §§ 146 and 145 of the Restatement for guidance. *Morgan*, 474 N.E.2d at 289. "Section 146 of the Second Restatement creates a presumption in tort actions that the substantive law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Phelps v. McClellan*, 30 F.3d 658, 661 (6th Cir. 1994) (*citing Morgan*, 474 N.E.2d at 289). Section 145 of the Restatement offers several factors to be used in determining the state with the most significant relationship to the issue. Under § 145, a court must determine the applicable law as follows:

>   (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
>   (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

5

>(a) the place where the injury occurred,
>(b) the place where the conduct causing the injury occurred,
>(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and
>(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971). These factors "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

The Defendants argue that California law applies to Avery Dennison's misappropriation of trade secrets claim and its tortious interference with contract claim because "any alleged harm is or will be suffered in California, which [Avery Dennison] alleges to be its principal place of business." (Doc. No. 34 at 32; *see also,* id. at 34 (California is where Avery Dennison "is based and thus where the harm caused by the alleged tortious conduct would have occurred.")).

Avery Dennison claims Ohio law applies because "[a]t the most elemental level, the claim of tortuous [sic] interference emerges from the Employee Agreement and its breach . . . ." (Doc. No. 33 at 7). Avery Dennison concludes "Ohio is the site and conduct of the injury caused by r-pac's interference, where Juhasz lives and was induced to breach his Employee Agreement, and where the relationship between Juhasz and Avery Dennison is located . . . ." (Id.). It also argues "misappropriation of trade secrets is not treated as a tort remedy, but as a statutory remedy under Ohio's Uniform Trade Secrets Act . . . [which] preempts common-law claims that possess the same nucleus of facts." (Doc. No. 33 at 8). Further, Avery Dennison claims "Ohio courts do not treat misappropriation of trade secrets as a tort for purposes of choice of law analysis." (Id.).

Avery Dennison's contentions regarding its preferred choice of law outcome for the misappropriation of trade secrets claim are unpersuasive. The fact that Ohio has created a statutory **remedy** for misappropriation of trade secrets claims does not alter the nature of the action, which lies in tort. Moreover, Avery Dennison supports its claim that "Ohio courts do not treat misappropriation of trade secrets as a tort for purposes of choice of law analysis" by citing to *Park-Ohio Indus. v. Carter*, a case from the Eastern District of Michigan in which the court conducted a

6

choice of law analysis as to the employment agreement there at issue. The *Park-Ohio* court made no reference to the plaintiff's misappropriation of trade secrets claim in its choice of law analysis, much less cited to any Ohio case law supporting Avery Dennison's contention. Avery Dennison's misappropriation claim stands independent of its breach of contract claim, as Count Two of the Verified Complaint does not reference any obligation purportedly arising under the Employee Agreement. (*See* Doc. No. 1 at 26-28).

In this case, the place of injury is California. *See, e.g., Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V.*, 391 F.3d 871, 879 (7th Cir. 2004) ("in a case such as this in which a company is complaining of a misappropriation of trade secrets that place would be – one might suppose – the site of the company's principal place of business" (*citing* Restatement (Second) Conflicts of Law § 145, comment e (1971))), *cert. dismissed*, *Elec. & Elecs. Ltd. v. Philips Domestic Appliances and Personal Care B.V.*, 545 U.S. 1151 (2005). Thus, under the presumption created by § 146, California law would apply to Avery Dennison's tort claims.

The analytical steps offered in § 145 do not overcome the presumption. Factor (a) supports the application of California law. The place where the harm allegedly has occurred or will occur is California, Avery Dennison's principal place of business. (Doc. No. 1 at 1). Factors (b), (c), and (d) are inconclusive. The conduct causing harm alleged in the misappropriation of trade secrets claim has occurred or will occur in Hong Kong, where Juhasz now is located, or New York, r-pac's principal place of business, while the conduct alleged to constitute tortious interference with contract has occurred or will occur in Ohio, Juhasz's domicile, or New York. (*See* Doc. No. 1 at 3). The domicile or place of business of the parties would suggest Ohio, New York, or California law. There is no relationship between Avery Dennison and r-pac, while Ohio arguably is the place in which the relationship between Avery Dennison and Juhasz was centered. The § 145 analysis does not identify any jurisdiction with a more significant relationship to the lawsuit than California.

## STANDARD

The Sixth Circuit has identified the following factors as proper for consideration prior to the issuance of a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others. *See, e.g., BasiComputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). These factors should be balanced against each other, but are "not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Comprehensive findings on all four factors are unnecessary when "fewer are dispositive of the issue." *Id.* at 1228.

## BREACH OF CONTRACT

Avery Dennison repeatedly asserts Juhasz breached the restrictive covenants set forth in the Employee Agreement. (*See* Doc. No. 2-1 at 21, 22, 24, 25; Doc. No. 33 at 7). It claims Juhasz has breached the Employee Agreement by accepting employment with r-pac, or will breach the Employee Agreement under the inevitable disclosure doctrine. Avery Dennison, however, has not demonstrated a substantial likelihood of success on the merits of this claim because it has failed to produce evidence of a breach.

As an initial matter, Avery Dennison mischaracterizes the language it chose to use in the Non-Competition provision of the Employee Agreement. Avery Dennison asserts "the Employee Agreement prohibits Juhasz from accepting employment with a direct competitor (like r-pac) for a period of one year . . . after the separation of his employment with Avery Dennison." (Doc. No. 2-1 at 24). Instead, the Employee Agreement actually prohibits Juhasz from working for a direct competitor like r-pac if he will "directly or indirectly provide services . . . that are the same or similar in function or purpose" to those he provided to Avery Dennison or if the services he provides to r-pac are likely to result in the use or disclosure of Confidential Information or customer goodwill. (Doc. No. 1-1 at 2).

8

The Defendants argue Juhasz is not in breach of the Employee Agreement, in particular the Non-Competition Requirement, because "Juhasz was hired by r-pac to perform entirely different services from those he performed" while employed by Avery Dennison. (Doc. No. 30 at 12). Juhasz and Michael Teitelbaum, CEO of r-pac, both testified that Juhasz was hired to be the Senior Director – Operations for r-pac; both assert this is a non-customer-facing role.

The Defendants produced a copy of the job description for the Senior Director – Operations at r-pac. This job description was created principally by Gareth Lancaster, Juhasz's immediate predecessor in the role. Avery Dennison points to several items in this job description as evidence that the position is not quite what the Defendants claim it to be. These include (1) responsibilities to engage in the development of sales and marketing strategies and to sustain relationships with external parties, including vendors and suppliers, as well as (2) notations that a good command of written and spoken Chinese is essential and that the ability to communicate in Cantonese and Mandarin is an advantage.

Avery Dennison argues Juhasz was intimately involved in the development of its sales strategies and also is prohibited from contacting vendors and suppliers under the Non-Solicitation provision. The Defendants acknowledge Juhasz was exposed to Avery Dennison's sales strategies but assert this aspect of the job description will not actually be part of Juhasz's responsibilities as Senior Director – Operations. The Defendants state that the strategy development and customer-facing responsibilities were very minor parts of Mr. Lancaster's duties and Teitelbaum testified he has made the appropriate adjustments to Juhasz's role so that it does not and will not violate the terms of the Employee Agreement.

Under the inevitable-disclosure doctrine, injunctive relief may be warranted if a threat of harm through disclosure of trade secrets "can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially

9

similar to the position held during the former employment." *Proctor & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 279 (Ohio Ct. App. 2000) (*citing PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir. 1995)).  Avery Dennison argues *Stoneham* identifies the key factor for analysis as "whether the former employee is working in a position that causes him to compete directly with the former employer or the product line he formerly supported."  (Doc. No. 33 at 10).  In *Stoneham*, the defendant left a position with Proctor & Gamble to begin working for Alberto-Culver; the two companies are direct competitors much like Avery Dennison and r-pac.  The *Stoneham* court stated the plaintiff:

> directly targeted the very products he worked on when employed at P&G for increased competition from Alberto–Culver products. He set up global teams like the ones that he had been on at P&G to identify Alberto–Culver's strategies for competing with P&G specifically and increasing sales in haircare generally. P&G's advertising campaigns were specifically discussed.

*Stoneham*, 747 N.E.2d at 280.  Avery Dennison claims the inevitable disclosure doctrine as described in *Stoneham* is directly on point in this case.  It argues "[n]o matter how Defendants characterize (or mischaracterize) Juhasz'[s] current job at r-pac, he is undeniably working in a position that causes him to compete not only with Avery Dennison, but also with the very RFID product he supported and sold for Avery Dennison."  (Doc. No. 33 at 11).  The evidence, however, supports the conclusion that the position of Senior Director – Operations at r-pac is not "substantially similar" to the position of Director, Mass Segment, at Avery Dennison, and so the inevitable disclosure doctrine does not support a finding that Juhasz has or will breach the Employee Agreement.

Avery Dennison also notes that Juhasz admits he does not have any abilities approaching command of Chinese, Cantonese, or Mandarin, and argues this is evidence that Juhasz's new position is a sham and a smoke screen.  There was uncontested testimony, however, that Mr. Lancaster did not have these abilities either, and it was he who included these items in the job description.  The argument that only an applicant who hits every skill or qualification requirement in the job description could be qualified for the position is unpersuasive.

Finally, Avery Dennison argues Juhasz cannot perform any role for r-pac in which he would not draw on the experience and knowledge he gained, and that it is impossible to believe he won't use the Confidential Information or trade secrets he was exposed to, while working for Avery Dennison.  These arguments, however, go to what Avery Dennison wants the Non-Competition provision to say rather than what it does say.  Avery Dennison's suspicion and mistrust of r-pac, although perhaps understandable, is not sufficient to overcome the testimony offered by the Defendants.  Both Juhasz and Teitelbaum, on behalf of r-pac, clearly stated they understand their obligations with respect to the Employee Agreement, including under the Confidential Information, the Non-Competition, and the Non-Solicitation provisions.  Nothing in this Order prevents Avery Dennison from coming forward with new evidence demonstrating that Juhasz, Teitelbaum, or both, has failed to abide by those obligations.

## MISAPPROPRIATION OF TRADE SECRETS

Avery Dennison alleges Juhasz had access to Confidential Information and trade secrets while employed at Avery Dennison.  (Doc. No. 1 at 26-27).  It seeks an injunction prohibiting Juhasz from using or disclosing the information or trade secrets while employed by r-pac.  (Id. at 27).  To state a cause of action for misappropriation of trade secrets under California law, a plaintiff must demonstrate the existence of a trade secret and misappropriation of the trade secret.  *AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp.2d 941, 950 (N.D. Cal. 2003).  "Actual or threatened misappropriation may be enjoined."  West's Ann. Cal. Civ. Code § 3426.2(a) (2012).  "The doctrine of inevitable disclosure is not the law in California."  *FLIR Systems, Inc. v. Parrish*, 174 Cal. App.4th 1270, 1277 (Cal. App. Ct. 2009) (*citing Whyte v. Schlage Lock Co.*, 101 Cal. App.4th 1443, 1447 (Cal. Ct. App. 2002); *see also Lam Research Corp. v. Deshmukh*, 157 Fed. Appx. 26, 28 (9th Cir. 2005) ("California does not recognize the inevitable disclosure doctrine . . .").

Avery Dennison argues that neither Juhasz nor r-pac "can be trusted not to utilize Avery Dennison's information."  (Doc. No. 33 at 12).  This is not sufficient, however, to establish a

11

likelihood of success on the merits. Avery Dennison has not produced any evidence to support a claim of actual or threatened misappropriation. It offers no evidence that Juhasz has used or disclosed any information, and California law forbids Avery Dennison from resting its arguments on the inevitable disclosure doctrine. Because Avery Dennison has failed to establish a likelihood of success on the merits of this claim, I conclude it is not entitled to a preliminary injunction preventing Juhasz from working for r-pac as Senior Director – Operations.

## TORTIOUS INTERFERENCE WITH CONTRACT

"In order to prove the tort of intentional interference with contractual relations, the California Supreme Court has made clear the basic elements that plaintiff must establish: (1) it has a valid and existing contract with a third party; (2) defendants had knowledge of the contract; (3) defendants committed an intentional act designed to induce a breach or disrupt the contractual relationship; (4) **actual breach or disruption of the contract relationship occurred**; and (5) damages were suffered as a result." *Sebastian Intern., Inc. v. Russolillo*, 162 F. Supp.2d 1198, 1203 (C.D. Cal. 2001) (*citing Quelimane Co. Inc. v. Stewart Title Guaranty Co.*, 960 P.2d 513 (Cal. 1998) *and Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587 (Cal. 1990) (emphasis added)). Because Avery Dennison has not established a likelihood it will succeed on the merits of its breach of contract claim, it cannot establish a likelihood of success on its tortious interference with contract claim.

## CONCLUSION

For the reasons stated above, Avery Dennison's request for a preliminary injunction is denied. The temporary restraining order issued on January 23 hereby is dissolved.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge